

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE __JUL 0 3 2019__

Fairhurst. C9.
CHIEF JUSTICE

This opinion was
filed for record
at 8am on July 3, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LAZURI DANIELS, individually, and on behalf of all those similarly situated, | ) ) ) | No. 96185-9 |
| Petitioner, | ) ) ) | |
| v. | ) ) | En Banc |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) ) | |
| Respondent. | ) ) ) | Filed    JUL 0 3 2019 |

JOHNSON, J.—This case concerns whether a first-party insurer, upon obtaining a partial recovery in a subrogation action, is required to reimburse its fault-free insureds for the full amount of their deductibles before any portion of the subrogation proceeds can be allocated to the insurer. Lazuri Daniels brought claims and sought class action status in a lawsuit against State Farm Mutual Automobile Insurance Company arguing that by failing to fully reimburse its insureds for their

deductibles after recovering in a subrogation action, State Farm violates both Washington law and its own insurance policy. The trial court dismissed the claims under CR 12(b)(6), and the Court of Appeals affirmed the dismissal. We reverse and remand to the trial court for further proceedings.

FACTS

On July 25, 2015, Daniels was involved in a three-vehicle wreck near Federal Way, Washington. At the time of the wreck, Daniels was insured by State Farm with a policy that included a $500 deductible. Daniels's vehicle was at the center of the wreck; the driver of the car that hit her from behind was insured by GEICO, and the driver in front of her was insured by Liberty Mutual. State Farm paid the portion of the repair costs that exceeded Daniels's deductible. State Farm then sought recovery of its payment from GEICO, which agreed that its insured was 70 percent at fault and reimbursed State Farm for that portion of the total cost of the repairs. From these proceeds, State Farm reimbursed Daniels for 70 percent of her deductible.[1]

Daniels brought a lawsuit and sought class action status against State Farm alleging that, under both its own policy and Washington law, State Farm is entitled

---

[1] Because this case was dismissed under CR 12(b)(6), the record had yet to be developed by the parties. As a result, the record does not indicate to whom GEICO attributed the remaining 30 percent fault or how the 70 percent fault was determined.

to recoup its money only after its insureds are fully compensated for their losses, including the full deductible, and that by allocating subrogation recoveries to itself before it has returned its insureds' full deductibles, State Farm violates this requirement. Daniels asserted claims for breach of contract, bad faith, and conversion. State Farm filed a motion to dismiss under CR 12(b)(6),[2] relying on *Averill v. Farmers Insurance Co. of Washington*, 155 Wn. App. 106, 229 P.3d 830 (2010), where the Court of Appeals held that the made whole doctrine does not extend to this type of subrogation action, as well as WAC 284-30-393, which requires subrogated insurers to return deductibles "less applicable comparable fault." Finally, State Farm argued that nothing in its policy language required it to return the full amount of deductibles before allocating to itself the proceeds of a direct subrogation action.

The trial court granted State Farm's motion to dismiss, and the Court of Appeals affirmed. *Daniels v. State Farm Mut. Auto. Ins. Co.*, 4 Wn. App. 2d 268, 421 P.3d 996 (2018). Daniels petitioned this court, and we granted review.[3] *Daniels v. State Farm Mut. Auto. Ins. Co.*, 192 Wn.2d 1001, 430 P.3d 261 (2018).

---

[2] CR 12(b)(6) allows a party to file a motion to dismiss a case for "failure to state a claim upon which relief can be granted."

[3] Amicus briefs were filed by the Washington State Insurance Commissioner, the Washington State Association for Justice Foundation, and American Property Casualty Insurance Association and National Association of Mutual Insurance Companies.

ISSUES

1. Whether Washington's made whole doctrine requires that insurers allocate subrogation proceeds to the full reimbursement of its insureds' deductibles prior to allocating any portion of the proceeds to itself.

2. Whether, in the absence of an acknowledgement that an insured bears comparative fault, WAC 284-30-393 requires an insurer to recover and return its insured's full deductible.

3. Whether State Farm's policy language required that it allocate subrogation proceeds to the full reimbursement of its insureds' deductibles prior to allocating any portion of the proceeds to itself.

ANALYSIS

"Subrogation is the right that one party has against a third party following the payment, in whole or in part, of a legal obligation that ought to have been met by such third party." 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 10:5, at 10-23 (6th ed. 2013). Its common law foundation applies as an "equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility." *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632 (1998). In the insurance context, the "doctrine of subrogation enables an insurer that has paid an insured's loss pursuant to a policy . . . to recoup the payment from the party responsible for the loss." Elaine M. Rinaldi, *Apportionment of Recovery between Insured and Insurer in a Subrogation Case*, 29 TORT & INS. L.J. 803, 803

4

(1994). The right to pursue such a claim against the at-fault party is often included in insurance policies, as it was in this case.

Generally two means exist through which a subrogated insurer can recover from a responsible third party: (1) the insured brings a claim against the third party and the insurer seeks reimbursement from the insured's recovery, or (2) the insurer can "stand in the shoes" of its insured and pursue a claim against the responsible party directly. In either situation, "[t]he potential for conflict of interest abounds." *Mahler*, 135 Wn.2d at 414. This is because if the insured still has uncompensated injuries, both the insurer and insured will generally be looking to recover from the same third party, and that party's own insurance and assets are not always sufficient to cover both claims. In such circumstances, there is a high potential for conflict between insureds who wish to be compensated for the full extent of the damages they have suffered, and first-party insurers who expect to be reimbursed for amounts they have advanced to the insured.

Daniels argues that insureds' right to be fully compensated for their losses, including full reimbursement for deductibles, takes priority over an insurer's interest in recouping its payments through a direct subrogation action. Daniels asserted in her complaint that State Farm's conduct violates both its own policy as well as Washington law. Three separate legal theories are presented for requiring

State Farm to return its insureds' full deductibles prior to allocating to itself any portion of subrogation proceeds. These include (a) the common law made whole doctrine, (b) Washington insurance regulations, and (c) State Farm's own policy language. The trial court dismissed all of Daniels's claims under CR 12(b)(6) and the Court of Appeals, in a divided opinion, affirmed. *Daniels*, 4 Wn. App. 2d at 278. Judge Becker dissented, asserting that *Averill* was wrongly decided and should be disavowed, and concluding that all three of Daniels's theories should survive a motion to dismiss under CR 12(b)(6).

Whether a case is properly dismissed under CR 12(b)(6) is a question of law that we review de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). Such a dismissal is appropriate where "there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." *Worthington v. WestNET*, 182 Wn.2d 500, 505, 341 P.3d 995 (2015) (citing *No New Gas Tax*, 160 Wn.2d at 164). Given this high standard, CR 12(b)(6) motions should be granted "'sparingly and with care'" where "plaintiff's allegations show on the face of the complaint an insuperable bar to relief." *No New Gas Tax*, 160 Wn.2d at 164 (quoting *Tenore v. AT&T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). Here, dismissal under CR

12(b)(6) was proper only if there is no set of facts that could conceivably be drawn from the complaint to support any one of the three legal theories involved. We begin our analysis with Daniels's claims under the common law made whole doctrine.

The Made Whole Doctrine

In addressing conflicts between subrogated insurers and injured insureds, we have generally established priority for the interests of the insureds through the made whole doctrine. In *Thiringer v. American Motors Insurance Co.*, we articulated this doctrine as a general rule that

> while an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for the damage, it can recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss.

91 Wn.2d 215, 219, 588 P.2d 191 (1978). In other words, an insurer can obtain reimbursement from an insured who has been more than fully compensated for their injuries and has actually received excess compensation from having received payments from both the first-party insurer and a third party. In these circumstances an insurer can seek reimbursement from its insured, as the insured is not entitled to a double recovery. But an insurer generally cannot obtain a recovery if its insured has uncompensated damages. We held that this rule "embodies a policy deemed

socially desirable in this state," as it prioritizes the indemnification of victims of automobile accidents, *Thiringer*, 91 Wn.2d at 220, and, in doing so, helps to reduce the potential conflicts between insurers and insureds.

As correctly recognized in Judge Becker's dissent below, the approach we took in *Thiringer* aligns with Professor Robert Keeton's "Fourth Rule" for allocating proceeds of a recovery from a third-party tortfeasor. "Out of the recovery from the third party the insured is to be reimbursed first, for the loss not covered by insurance, and the insurer is entitled to any remaining balance, up to a sum sufficient to reimburse the insurer fully, the insured being entitled to anything beyond that." ROBERT E. KEETON, BASIC TEXT ON INSURANCE LAW § 3.10(c)(2), at 161 (1971).

The issue before us is how, under the circumstances of this case, the made whole doctrine applies. Daniels argues that we should prioritize an insured's recovery in any type of subrogation scenario, including where the insurer pursues a direct subrogation action against a responsible third party. Under this broad view of the doctrine, an insurer like State Farm would have to ensure that its subrogation recovery is first allocated to any uncompensated portion of its insured's loss before the insurer allocates any proceeds to itself. State Farm, on the other hand, asserts that the doctrine is specifically confined to situations where the insurer seeks to be

reimbursed from the insured's own recovery from a third party and does not apply in situations where an insurer pursues a direct subrogation action to recoup its payments. Under this view, the insurer would be able to allocate the proceeds recovered in the subrogation action to itself before its insured has been fully compensated for their loss. The trial court agreed with State Farm and held that under *Averill*, the made whole doctrine does not provide Daniels a claim for relief.

*Averill* was decided by the Court of Appeals with similar facts as the case before us. Two drivers were involved in a wreck and the drivers' insurers determined the two were equally at fault. After Farmers Insurance Company of Washington received a 50 percent recovery and reimbursed Averill for half of her deductible, she sued the insurer, claiming that among other things, the common law made whole doctrine required a full return of her deductible before Farmers could allocate any proceeds to itself. The Court of Appeals rejected this argument, holding that the made whole doctrine limits an insurer's recovery only when it seeks reimbursement from its insured and does not extend to situations where the insurer pursues its subrogation claim directly. The court went on to hold that this result is consistent with the purpose of deductibles, which represent "the amount of risk retained by the insured," and that to allow Averill to recover her deductible

would change the contract to one without a deductible, which the court was "not at liberty" to do. *Averill*, 155 Wn. App. at 114. We disagree.

The analysis in *Averill* runs counter to the principles our cases have established addressing the made whole doctrine. We have not confined this doctrine to situations involving reimbursement from the insured; on the contrary, we have expressly stated that it extends further. As Judge Becker correctly recognized in her dissent below, in *Sherry v. Financial Indemnity Co.* we established a broader view that the made whole doctrine applies whenever an insurer seeks "an offset, *subrogation*, or reimbursement for PIP [personal injury protection] benefits already paid." 160 Wn.2d 611, 618, 160 P.3d 31 (2007) (emphasis added). Furthermore, an analysis of *Thiringer* and *Sherry* reveals that we have not limited the doctrine in the manner asserted by the *Averill* court.

In *Thiringer*, the insured was injured in a car wreck and sought payment from his insurer after the at-fault driver was unable to compensate him for his full general and special damages. His insurer denied his claim, arguing that the recovery from the at-fault driver was sufficient to cover his insured special damages and the recovery should be allocated to those damages first, rather than to his uninsured general damages. We rejected that argument and held that Thiringer had "a right to expect that the payments promised under this coverage will be

10

available to him," and established a rule that insureds such as Thiringer are

"entitled to be made whole." *Thiringer*, 91 Wn.2d at 220. This meant that he could

first allocate the payments from the at-fault party to his general damages and then

seek recovery from his own insurer for his special damages.

The important point here is that the insurer in *Thiringer* was not seeking to

be reimbursed from a recovery; instead, it was seeking to avoid payment in the first

place by controlling how the recovery from the third party was allocated. We held

that the made whole doctrine applied and allowed the insured to allocate his

proceeds in a manner that would bring him the closest to being made whole. Given

that *Thiringer* did not involve a claim for reimbursement, any argument that it

limited the made whole doctrine to such claims fails.

In *Sherry*, we expanded on this reasoning. *Sherry* involved a pedestrian who

was struck by a car driven by an uninsured motorist. The pedestrian was insured by

Financial Indemnity Company (FIC) under both an underinsured motorist (UIM)

policy and a PIP policy. FIC paid for medical benefits and lost wages under the

PIP policy, then claimed an offset when it paid UIM benefits, seeking to reduce its

UIM payment to account for the PIP payments it had already made, as well as to

account for comparative fault of the insured. We held that FIC could not claim an

offset until its insured had been fully compensated for his damages, as he had a

right to be made whole, and that full compensation in this context referred to compensation for the insured's full actual damages with no reduction based on comparative fault. *Sherry*, 160 Wn.2d at 625.

*Sherry* involved no claim for reimbursement; there was no third party from which FIC could be reimbursed because it was FIC that was paying under both policies. Instead of seeking reimbursement, the insurer was seeking to minimize its payments through an offset, and we held that it could not do so when its insured had yet to be made whole. Neither *Thiringer* nor *Sherry* involved claims for reimbursement by the insurer, so there appears to be no support for the assertion in *Averill* that the made whole doctrine is so confined.

We also disagree with the *Averill* court's reasoning that allowing an insured to recover their deductible from a subrogation recovery would change the insurance contract to one without a deductible. The court reasoned that the deductible was the amount Averill contracted to be out of pocket before her insurance would be triggered, but its analysis did not fully explain how this creates a conflict with application of the made whole doctrine to subrogation claims. The idea would appear to be that an insured's premium is, among other things, based on the amount of risk the insured retains in the form of a deductible. Thus, by receiving back her deductible without any change to her premium, Averill would

12

receive a windfall. She would have a lower premium that was based, in part, on her having to pay a deductible, yet application of the made whole doctrine would relieve her of being out-of-pocket for that deductible. Once again, we disagree.

The focus on deductibles as contracted-for risk is only one way of viewing deductibles; they also act to "eliminate insurance coverage for losses that are small enough that they are better borne by the insured . . . because the administrative expenses for an insurer are substantial in relation to the amount of such losses." ROBERT E. KEETON & ALAN I. WIDISS, INSURANCE LAW § 3.10, at 240 (1988). Thus, an insured pays a higher premium for a lower deductible to make up for the increased administrative costs that come with the insurer having to cover smaller claims. Requiring that an insurer reimburse insureds for deductibles as part of the made whole doctrine does not interfere with this purpose and does not rewrite the policy to one with no deductible. Where insureds sustain a loss that does not exceed the amount of their deductible, they will still receive no benefits under the policy.

The analysis in *Averill* is in conflict with the policy underlying the made whole doctrine, and to the extent the Court of Appeals held the made whole doctrine is confined to reimbursement claims, we overrule it. Under *Thiringer* and *Sherry*, no distinction exists based on who brings a claim against a responsible

third party. Since the claim seeks recovery of the insured's losses, that the insurer brings the subrogation claim makes no difference in the application of the made whole doctrine—the principles of the doctrine apply equally and the result is the same. Whether in the context of a reimbursement request, offset, or direct subrogation action, a fault-free insured must be made whole for their entire loss before an insurer may offset or recover its own payments. Stated another way, the proceeds of any recovery from a third-party tortfeasor, whether in a subrogation action or otherwise, must be allocated in such a way as to first make the insured whole. Daniels's complaint asserted that State Farm fails to abide by this requirement, which states a valid claim supported by the common law made whole doctrine and survives a CR 12(b)(6) motion to dismiss.

Insurance Regulations

We turn next to Daniels's assertion that State Farm violates Washington's insurance regulations. We interpret regulations under the same rules used in statutory construction. *Mader v. Health Care Auth.*, 149 Wn.2d 458, 472, 70 P.3d 931 (2003). In doing so, we seek "to ascertain and give effect to its underlying policy and intent." *Cannon v. Dep't of Licensing*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002). If a regulation is clear on its face, then its meaning should be derived from the plain language; however, if the regulation is subject to two or more reasonable

14

interpretations, we will resort to principles of statutory construction, legislative history, and relevant case law to assist in resolving the ambiguity. We construe an ambiguous rule or regulation to effectuate the intent of the agency. *Cannon*, 147 Wn.2d at 57.

The regulation at issue here is WAC 284-30-393, the relevant portion of which reads, "The insurer must include the insured's deductible, if any, in its subrogation demands. Any recoveries must be allocated first to the insured for any deductible(s) incurred in the loss, less applicable comparable fault." The parties agree that this requires an insurer to seek recovery of its insured's deductible as part of any subrogation claim against a third party and that the insurer must return some portion of the deductible to the insured. The dispute between the parties is over the meaning of the final four words, "less applicable comparable fault."

Daniels argues that "applicable comparable fault" refers to fault that is attributable to the insured. Under this interpretation, the disputed portion of the regulation is confined to circumstances where there is a determination that the insured is partially at fault. State Farm, on the other hand, contends there is nothing in the language that limits "applicable comparable fault" to fault that has been attributed to the insured. It would have us interpret the regulation such that the

insurer need reimburse its insured only for a portion of the deductible equal to the fault of the party from which it has recovered.

In its amicus brief, the Office of the Insurance Commissioner (OIC) points us to a final cost benefit analysis issued during the rule making process to amend WAC 284-30-393 to its current form. This analysis explains that the party who petitioned for the amendment, Farmers Insurance, specifically asked that the rule be amended so "insurers may deduct the amount of *an insured's* comparative fault from reimbursement for their deductible." Clerk's Paper's (CP) at 33 (emphasis added). The OIC's analysis then goes on to state repeatedly that the amendment is meant to do just that, to allow reductions to the reimbursement of deductibles based on the insured's fault. *See* CP at 36 (stating that the amendment will provide "greater clarity in resolving claims . . . where the *policyholder* is partially at fault" (emphasis added)).

We interpret the regulation in the manner intended by the agency, and in doing so, it is evident that Daniels raised a valid claim regarding violation of the WAC. Accepting the facts alleged in her complaint as true, there appears to have been no assertion that Daniels herself bore any fault for the wreck, yet State Farm withheld 30 percent of her deductible. Daniels also alleges that this conduct is consistent with State Farm's dealings with its other insureds. Such assertions

support the claim that State Farm violates WAC 284-30-393 with regard to the

asserted class. [4]

Policy Language

Daniels's final argument, and the one focused on most by the Court of

Appeals, concerns State Farm's own policy language. The relevant language is in

the "General Terms" section of the policy and states:

> If *we* are obligated under this policy to make payment to or for a
> party who has a legal right to collect from another, then the right of
> recovery of such party passes to *us*. . . .
>
> . . . .
>
> *Our* right to recover *our* payments applies only after the *insured* has
> been fully compensated for the *bodily injury, property damage* or
> *loss*.[5]

CP at 80. Daniels argues that the first section creates a basic subrogation right,

allowing State Farm to seek repayment from a responsible party after it has made a

payment to its insured. She then argues that the second section controls the

allocation of proceeds from a successful subrogation claim and requires that the

insured be made whole for any remaining loss before State Farm can repay itself

for its insurance payments.

---

[4] Daniels additionally argues that absent *Averill*, WAC 284-30-393 must fully incorporate the made whole doctrine. We need not address this argument given the inapplicability of the WAC in the context of fault-free insureds.

[5] The bolded and italicized words in the policy are defined in a separate portion of the policy not included in the record.

Daniels points out that the second section uses the word "our" when discussing the payments to which State Farm gains the right to recover, while the first section does not contain this limiting word. Thus, Daniels argues, the first section must be read as granting State Farm a very general right of recovery, allowing it to stand in the shoes of its insured to pursue any and all funds owed by a third party. If State Farm is successful in such an action, the second section would then stand as the limit on what funds State Farm can allocate to itself. Daniels argues that State Farm's "right to recover [its] payments" from the subrogation proceeds "applies only after the insured has been fully compensated for the . . . loss," and that the "loss" includes any portion covered by a deductible.

The trial court rejected this interpretation, holding that Daniels was "fully compensated for her property loss claimed under her collision coverage when she accepted payment from State Farm," at which time her claim passed to State Farm. CP at 69-70. The Court of Appeals majority agreed and appeared to read both sections of the policy as controlling when State Farm's right to pursue recovery was triggered, not how proceeds would be allocated. We disagree.

We interpret language in an insurance policy as a matter of law and review de novo. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 710, 375 P.3d 596 (2016). We seek to give such policies a "practical and reasonable" interpretation,

rather than a "strained or forced construction" or one that leads to an absurd conclusion. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434, 545 P.2d 1193 (1976).

We are presented with two different interpretations of State Farm's policy language; however, the presence of two possible interpretations does not make the language ambiguous unless both interpretations are reasonable. Here, there can be only one reasonable interpretation, which is one that aligns with the common law made whole doctrine. The interpretation State Farm urges, and which was adopted by the courts below, does not align with that doctrine; therefore we reject it. We accept Daniels's assertion that the second section of the policy language prohibits State Farm from allocating subrogation proceeds to itself until its insured is fully compensated for their loss, which includes full reimbursement for the insured's deductible. This interpretation is consistent, as it must be, with the made whole doctrine and the basic principles of subrogation, which emphasize the loss suffered by the insured. Under this interpretation, Daniels has asserted a valid claim that State Farm violates the policy.

## CONCLUSION

Daniels's complaint asserted valid claims for relief under the common law, under Washington insurance regulations, and under State Farm's own policy

language. As such, dismissal under CR 12(b)(6) was improper. We reverse and

remand to the trial court for further proceedings.

WE CONCUR: