# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LAZURI DANIELS, individually, and on behalf of all those similarly situated | ) ) ) | No. 75727-0-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | FILED: July 16, 2018 |

SPEARMAN, J. — When interpreting a term or phrase in an insurance contract, we view the term or phrase in the context of the entire contract and not in isolation. We consider the insurance policy as a whole, giving the policy a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. Where possible, we harmonize provisions of the contract that appear to be in conflict to give effect to all of the contract's provisions. But we avoid a literal, strained or forced interpretation which could lead to absurd results. In this case, Lazuri Daniels purchased an automobile insurance policy from State Farm Mutual Automobile Insurance Company (State Farm). Under the terms of the policy, State Farm has the right to recover payments it is obligated to make, but it may only exercise that right after Daniels

has been fully compensated for damage or loss. The policy also provides that Daniels pay a deductible to cover the first $500 of the loss.

When Daniels' vehicle was damaged in a collision, she paid the deductible and State Farm paid the remaining amount of the cost to repair her car. When State Farm recovered 70 percent of the amount it paid for the repair from the tortfeasor's insurance company, it also recovered 70 percent of Daniels' deductible payment and paid it to her. Daniels contends State Farm violated the policy because it did not pay her the full amount of the deductible. She claims that before State Farm could exercise its right to recover the payments it made, the policy requires that she be "fully compensated" for her loss which she argues includes the full amount of the deductible. State Farm contends that it satisfied the policy's terms because Daniels was fully compensated when it paid the cost to repair her car. It disputes that, as that term is used in the policy, "fully compensated" includes Daniels' deductible. The trial court agreed with State Farm and dismissed Daniels' claims.

We hold that State Farm fully compensated Daniels for her loss when it paid for the repairs of the car and properly exercised its right to recover that payment. We affirm.

## FACTS

Lazuri Daniels' car was damaged in a three car accident. State Farm insured her vehicle for collision coverage with a $500 deductible. Daniels paid the deductible and State Farm paid the remaining cost to repair the car.

2

In subrogation, State Farm sought payment for the repairs from Geico, which insured one of the other drivers. Attributing 70 percent fault to its client, Geico agreed to pay 70 percent of the cost to repair Daniels' car. Pursuant to insurance regulation, State Farm also sought reimbursement for Daniels' deductible. It returned $350, or 70 percent, of her deductible to Daniels.

Daniels filed a complaint asserting that State Farm violated the insurance policy by failing to fully reimburse her deductible with funds obtained in its subrogation effort against Geico. She pleaded claims for breach of contract, tort of bad faith, and conversion, and she requested class action certification.

State Farm moved to dismiss the complaint. Meanwhile, not satisfied with the reimbursement amount from Geico, State Farm sought arbitration. The arbitrator determined that Geico's client was 100 percent at fault for the accident. State Farm recovered and gave Daniels the remaining $150 of her deductible.

The trial court granted State Farm's motion to dismiss. Daniels appeals.

## DISCUSSION

Daniels argues that the trial court erred in dismissing her complaint. She contends that State Farm did not comply with the terms of its policy when it failed to return her full deductible before retaining money it received in subrogation.

We review a CR 12(b)(6) dismissal de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). Dismissal is warranted if the court concludes beyond a doubt that "the plaintiff cannot prove any set of facts which would justify recovery." Tenore v. AT&T Wireless Services, 136 Wn.2d 322, 330, 962 P.2d 104 (1998).

Interpretation of an insurance contract is a question of law that we also review de novo. Averill v. Farmers Ins. Co. of Wash., 155 Wn. App. 106, 118, 229 P.3d 830 (2010). Because they are generally contracts of adhesion, courts look at insurance contracts in a light most favorable to the insured. Id. (Citing Panorama Vill. Condo. Owners Ass'n Bd. of Dir. v. Allstate Ins. Co., 144 Wn.2d 130, 141, 26 P.3d 910 (2001)). A contract of insurance should be given a fair, reasonable and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the average person purchasing insurance. Morgan v. Prudential Ins. Co. of Am., 86 Wn.2d 432, 545 P.2d 1193 (1976) (citing Ames v. Baker, 68 Wn.2d 713, 415 P.2d 74 (1966)). "Where possible, we harmonize clauses that seem to conflict in order to give effect to all of the contract's provisions." Kut Suen Lui v. Essex Ins., Co., 185 Wn.2d 703, 710, 375 P.3d 596 (2016). We also give the contract a practical and reasonable rather than a literal, strained or forced interpretation which would lead to an absurd conclusion. Morgan at 434. "The insurance contract must be viewed in its entirety; a phrase cannot be interpreted in isolation." Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997).

The policy language at issue here states:

**12. Our Right to Recover Our Payments**

. . .

c. Underinsured Motor Vehicle Property Damage Coverage and Physical Damage Coverages

If *we* are obligated under this policy to make payment to or for a party who has a legal right to collect from another, then the right

of recovery of such party passes to *us*. Such party must help *us* recover *our* payments by:

(1)  keeping *our* right to recover *our* payment in trust for *us* and doing nothing to impair that legal right;

(2)  executing any documents *we* may need to assert that legal right; and

(3)  taking legal action through *our* representatives when *we* ask.

*Our* right to recover *our* payments applies only after the *insured* has been fully compensated for the *bodily injury, property damage*, or *loss*.

. . .

Clerk's Papers at 80. (Emphasis added).

Daniels contends that the policy unambiguously conditions State Farm's right to recover its payments on Daniel's full compensation for her property loss, including her full deductible. Daniels argues that in the absence of a conflicting policy definition, the term "loss" can only mean "the total amount of the insured's damages."[1] Appellant's Reply Br. at 7. Thus, she contends that State Farm has no right to subrogation until she receives full compensation for the total amount of her loss, which would include that part of the loss covered by her deductible.

State Farm argues that "fully compensated" means payment of the insured's property loss less the deductible. And, because it paid this amount, State Farm contends that under the policy, it is entitled to subrogation of her claims. We agree with State Farm.

Daniels reading of the insurance contract is flawed in a number of respects. First, Daniels asserts that under the contract, State Farm has no right to seek recovery at all, unless and until its insured obtains a full refund of his or

---

[1] Although the parties agree that the policy contains a definition of the term "loss," it is not included in the record before us. The parties also agree that the policy does not define the term "fully compensated."

her deductible. "Whatever rights State Farm may have to recover its payments, it does not have those rights until after its insured has been fully compensated for the loss." Br. of Appellant at 15. And to the extent State Farm has a right to seek recovery, it "has no such rights until its insured receives full compensation." Id. at 17. But reading the contract to preclude State Farm's subrogation unless Daniels first obtains a full refund of her deductible leads to absurd results. Under Daniels reading of the contract, before State Farm could assert a subrogation claim against a third party, one of two things would have to occur. First, State Farm would have to refund the deductible that Daniels paid, which would make the provision requiring the payment of the deductible meaningless. Or, second, Daniels would have to obtain reimbursement from the third party on her own. And if she failed to do so for any reason, or simply chose not to, State Farm would be barred from seeking recovery of the payments it made from the responsible third party.

In addition, Daniels' reading of the contract is inconsistent with WAC 284-30-393, which places the burden of pursuing a refund of the insured's deductible on the insurer. Under that regulation:

> The insurer must include the insured's deductible, if any, in its subrogation demands. Any recoveries must be allocated first to the insured for any deductible(s) incurred in the loss, less applicable comparable fault. Deductions for expenses must not be made from the deductible recovery unless an outside attorney is retained to collect the recovery. The deduction may then be made only as a pro rata share of the allocated loss adjustment expense. . . .

The regulation recognizes that insureds often lack the resources or incentive to pursue recovery of what is very often a small amount of money. It therefore

places the burden of collecting the refund on the insurer. But the regulation assumes that the insurer's ability to proceed with a subrogation claim precedes a refund of the deductible to the insured. Daniels reading of the contract does just the opposite. The logical result of her interpretation is that State Farm is either precluded from subrogating its claim and thus its ability to obtain a refund of Daniels' deductible or Daniels would have to seek the refund on her own. In either event, the purpose of the regulation would be frustrated. State Farm either was or was not entitled to exercise a subrogation right. If it was, then by Daniels' own definition, she was "fully compensated." If it wasn't, then the issue isn't how State Farm allocated the funds it received, but instead that it was subrogating its claim at all. Daniels can't have it both ways.[2]

We conclude that the only reasonable interpretation of the term "fully compensated" as used in the insurance contract at issue in this case, does not include the amount of deductible paid by the insured. The trial court did not err in dismissing Daniels' complaint on this ground.[3]

---

[2] The dissent also argues that State Farm's right to recover its payments is not at issue and complains that this is just "a straw man argument." Dissent at 23. The dissent appears to suggest that State Farm has the right to pursue recovery of its payments from third parties, regardless of whether the insured has been fully compensated, despite Daniels' explicit argument to the contrary. See Br. of Appellant at 10, (State Farm's "right to pursue third party recoveries" was "entirely contingent on her first being fully compensated for her loss.") See also Br. of Appellant at 15, 17.

[3] State Farm relies heavily on Meas v. State Farm Fire and Cas. Co., 130 Wn. App. 527, 123 P.3d 519 (2005). In that case the court stated that the insured was "fully compensated or 'made whole'" for the property loss claimed under his collision coverage when he received payment from State Farm. Further, State Farm recovered his deductible and paid it to him." Id. at 538. State Farm argues that this statement establishes that the term "fully compensated" does not include the insured's payment of the deductible. But we do not find the case persuasive because the quoted assertion is made without analysis and was not germane to the central issue before the court.

Daniels also argues that she stated a claim for recovery under WAC 284-30-393, which requires that a subrogating insurer also seek recovery of the insured's deductible, less applicable fault. Daniels argues that State Farm violated this provision by not reimbursing her full deductible because it was later determined by an arbitrator that she was not at fault.

State Farm complied with WAC 284-30-393. It included Daniels' deductible with its subrogation demand and originally reimbursed her 70 percent based on Geico's initial determination that its insured was 70 percent at fault. It then fully reimbursed her when an arbitrator concluded that she was not at fault. Daniels relies on hindsight to argue that, because she was ultimately found not at fault, she should have been originally reimbursed her full deductible. But State Farm's incremental implementation of WAC 284-30-393 was reasonable and complied with the plain language of the regulation. In addition, because Daniels did not plead lack of fault in her complaint, the record does not support her argument that she had no "applicable comparable fault" at the time she was first reimbursed her deductible. The trial court did not err in finding that there was no violation.

## Amendment of Complaint

Daniels argues that the trial court erred by denying her request that she be granted leave to amend her complaint "to address any deficiencies found by the trial court." Br. of Appellant at 27-28. The decision to grant leave to amend the pleadings is within the discretion of the trial court. Sprague v. Sumitomo Forestry Co. Ltd., 104 Wn.2d 751, 763, 709 P.2d 1200 (1985).

Daniels does not identify in her appellate brief how she might amend her complaint. Thus, we cannot assess whether permitting amendment would cause prejudice such as "undue delay, unfair surprise, and jury confusion." Wilson v. Horsley, 137 Wn.2d 500, 505-06, 974 P.2d 316 (1999) (citing Herron v. Tribune Publ'g. Co., Inc, 108 Wn.2d 162, 165-66, 736 P.2d 249 (1987). RAP 10.3(a)(6) directs each party to supply, in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." We do not consider conclusory arguments that are unsupported by citation to authority. Joy v. Dep't of Labor & Industries, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). Therefore, we decline to consider this assignment of error.

## Attorney Fees

Daniels seeks attorney fees under Olympic Steamship Co. Inc., v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991). Because Daniels is not the prevailing party, she is not entitled to fees under Olympic Steamship.

No. 75727-0-I/10

Affirmed.[4]

WE CONCUR:

Spearman, J.

Appelwick, J.

---

[4] Although both parties discuss <u>Averill v. Farmers Ins. Co. of Washington</u>, 155 Wn. App. 106, 229 P.3d 830 (2010), at length, the case is inapposite because the contract language at issue in that case was different than the language we examine here. In addition, Daniels' reliance on <u>Sherry v. Financial Indem. Co.</u>, 160 Wn.2d 611, 621, 160 P.3d 31 (2007) and <u>S & K Motors, Inc. v. Harco Nat. Ins. Co.</u>, 151 Wn. App. 633, 213 P.3d 630 (2009) is misplaced. Those cases involved situations where the insured recovered directly from the tortfeasor. In those circumstances the term "fully compensated" takes on a more expansive meaning.

Daniels v. State Farm Mut. Auto. Ins. Co., 75727-0-I

BECKER, J. — This appeal is part of an ongoing controversy about how to allocate a collision deductible after a subrogation recovery by the insurer. Appellant Daniels contends that her insurer, State Farm, was required to fully compensate her for the deductible before keeping any part of the recovery it obtained through subrogation from the tortfeasor who damaged Daniels' car. State Farm made a recovery of 70 percent of the cost of repair from the insurer of another car involved in the collision. Instead of making Daniels whole from that recovery for 100 percent of her $500 deductible, State Farm sent her a check for only 70 percent of it, or $350.[1]

The touchstone in Washington on this topic is Thiringer v. American Motors Insurance Co., 91 Wn.2d 215, 588 P.2d 191 (1978). The controversy arises from a case involving a deductible in which this court ruled that the made whole doctrine of Thiringer has no application to the insurer's recovery in subrogation. Averill v. Farmers Ins. Co. of Wash., 155 Wn. App. 106, 229 P.3d 830, review denied, 169 Wn.2d 1017 (2010).

_____

[1] This case did not become moot when, some time later, State Farm obtained the remaining 30 percent from the insurer in arbitration and then returned to Daniels the remaining 30 percent of her deductible ($150). See Clerk's Papers at 65. The question posed by Daniels' appeal is whether an insurer is obligated to make its insured whole from the first dollars recovered in subrogation, without waiting to see whether further efforts will increase the amount of the insurer's recovery.

Daniels' complaint alleges causes of action for breach of contract, bad faith, and conversion. Respondent State Farm relies on Averill as the primary basis for affirming the trial court's dismissal of Daniels' complaint for failure to state a claim. Daniels maintains that Averill was wrongly decided, but argues in the alternative that she is entitled to relief under the policy language even if the common law made whole doctrine does not apply. The majority focuses exclusively on the contract language and does not address Averill except to say in a footnote that it is inapposite because the contract language at issue in that case was different from the language in Daniels' policy. Majority at 10 n.4.

I respectfully dissent from the majority's conclusion that it would be an absurd result if the policy language is interpreted to require reimbursing Daniels for the deductible before State Farm takes any portion of the subrogation recovery. But first, I must disagree that the case can be decided in favor of State Farm without discussing Averill. Because Daniels has squarely presented the argument that the made whole doctrine applies to the recovery of deductibles notwithstanding Averill, we cannot ignore it. I would accept Daniels' request to revisit Averill. I would hold that the made whole doctrine applies, that Averill is inconsistent with Washington case law on subrogation and reimbursement, and that the subrogation provision in the State Farm policy incorporates the made whole rule of Thiringer. The order of dismissal should be reversed, and Daniels should be allowed to proceed with her lawsuit.

The broad issue, as presented by Professor Robert Keeton, is, "After an insurer has paid to an insured the benefits specified in the insurance contract,

2

what are the interests of the insurer and the insured in the insured's claim against a third party allegedly responsible for the loss?" ROBERT E. KEETON, BASIC TEXT ON INSURANCE LAW § 3.10(c)(2), at 160 (1971). Keeton summarizes five theoretical approaches to the problem of allocating proceeds of a recovery from a third-party tortfeasor. They range from a rule that entitles the insurer to the full amount recovered on the theory that the insurer is the sole beneficial owner of the claim against the third party, to the opposite rule that rejects subrogation and entitles the insured to the full amount recovered whether or not the total received from the third party and the insurer exceeds the insured's loss. Keeton, at 161-62. In the middle, Keeton's "Third Rule" is a proration approach, whereby the recovery from the third person "is to be prorated between the insurer and the insured in accordance with the percentage of the original loss for which the insurer paid the insured under the policy." Keeton, at 161.

Professor Keeton's "Fourth Rule" is, "Out of the recovery from the third party the insured is to be reimbursed first, for the loss not covered by insurance, and the insurer is entitled to any remaining balance, up to a sum sufficient to reimburse the insurer fully, the insured being entitled to anything beyond that." Keeton, at 161. This approach, followed by most courts, is termed the "Insured: Whole" rule in Elaine M. Rinaldi, Apportionment of Recovery Between Insured and Insurer in a Subrogation Case, 29 TORT & INS. L.J. 803, 805-06 (1994). The Rinaldi article recognizes Washington as an "insured-whole" state that follows Keeton's Fourth Rule, citing Thiringer as the basis for this classification. 29 TORT & INS. L.J. at 807 & n.41.

3

The issue in Thiringer concerned the allocation of the proceeds of a settlement obtained from the tortfeasor by the insured in a personal injury case after the insurer had paid out coverage under a personal injury protection (PIP) provision. The insurer argued that the proceeds "should be allocated first to the special damages covered by the PIP provision or, in the alternative, prorated between the general damages and the PIP damages." Thiringer, 91 Wn.2d at 219. The court rejected this argument and held that the insurer was not entitled to reimbursement until the insured had been made whole. "While an insurer is entitled to be reimbursed to the extent that its insured recovers payment for the same loss from a tort-feasor responsible for the damage, it can recover only the excess which the insured has received . . . after the insured is fully compensated for his loss." Thiringer, 91 Wn.2d at 219. Thus, it is clear that Washington does not belong in the "insurer-whole" or "proration" categories identified in Keeton, at 161. In Washington, the limiting principle is that "insureds are not entitled to double recovery." Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 618, 160 P.3d 31 (2007). Under Thiringer, so long as the insured does not receive a double recovery, the insured's interest comes first.

1. The made whole doctrine is not limited to recoveries made by the insured

Averill undermines Thiringer. Averill does this after surveying Thiringer and cases applying it and then categorizing them as cases "where the insurer sought reimbursement out of third party funds recovered by the insured." Averill, 155 Wn. App. at 112-13. From this, Averill deduces that Thiringer does not apply to cases where the insurer recovers directly from the tortfeasor in subrogation.

4

"Farmers pursued its own subrogation interest against the tortfeasor. The made whole doctrine has no application to this recovery." Averill, 155 Wn. App. at 114. This narrowing of the Thiringer principle is found in no other Washington case.

The Averill court adopted Farmers' premise that the key to application of the made whole doctrine is "whether the insured or the insurer made the recovery." Averill, 155 Wn. App. at 111. The court cited no scholarly support for this premise, and I have found none. The court acknowledged that Averill would have been entitled to recover her full deductible if she had been the one who obtained the third-party recovery. Averill, 155 Wn. App. at 113. There is no reason why the outcome should be different when it is the insurer who obtains the recovery. Either way, it is the insured's loss that is being recovered. A subrogating insurer is "standing in the shoes of its subrogor" and is thus acting in the name of its insured against the third party when it pursues its reimbursement right. Mahler v. Szucs, 135 Wn.2d 398, 413, 415 & n.8, 957 P.2d 632, 966 P.2d 305 (1998).

The Averill court erred by limiting Thiringer to the procedural posture of the cases in which it has previously been applied. Nothing in the *law* stated by those cases, including Sherry and Mahler, forecloses applying the made whole rule to a subrogation recovery obtained by the insurer; in fact, they indicate that it should apply. The general view is that "subrogation creates in the insurer, by contract or equity, a right to be reimbursed. The enforcement of the interest, whether by a type of lien against the subrogor/insured's recovery from a tortfeasor *or by an action by the subrogee/insurer in the name of the insured against the tortfeasor,*

5

is governed by the general public policy of full compensation of the insured." Mahler, 135 Wn.2d at 417-18 (emphasis added). Averill is inconsistent with this statement. By declaring that Thiringer applies only to "cases where the insured recovers the payment and the insurer is seeking reimbursement, not vice versa," Averill nudges the made whole doctrine out of its central and influential place in Washington insurance law. Averill, 155 Wn. App. at 112 (footnote omitted). Indeed, State Farm's brief depicts Thiringer's holding as narrow and suggests that Averill should now be regarded as the leading case.

Averill confusingly invokes the common fund doctrine in support of its analysis. The court says that if Averill had sued the tortfeasor directly, "the combination of the property loss insurance payments and the third party recovery would have created a common fund," and the made whole rule would have limited Farmers to reimbursement of the property loss payments. Averill, 155 Wn. App. at 113, citing Mahler, 135 Wn.2d at 426-27. The common fund doctrine is not the basis of the made whole rule of Thiringer. Keeton and other scholars do not mention the common fund doctrine when discussing the various approaches to allocation of third-party recoveries. In Washington, the common fund doctrine is the source of Mahler's requirement that the insurer pay a portion of the insured's attorney fees when the insured achieves a recovery from the tortfeasor that includes amounts previously paid by the insurer—for example, personal injury protection benefits. Mahler, 135 Wn.2d at 426-27. Sharing of attorney fees was not an issue in the present case or in Averill, nor was it an

issue in Thiringer or Sherry. Injecting the common fund doctrine into the analysis only muddles it.

Further muddling comes from attributing significance to the distinction made in Mahler between reimbursement and subrogation. Averill, 155 Wn. App. at 112 n.2, citing Mahler, 135 Wn.2d at 420 n.9, 415 n.8. Reimbursement and subrogation are terms with distinct meanings that are often used imprecisely. But the fact that they have distinct meanings does not mean that the made whole doctrine applies only to one and not the other. Averill invokes the distinction in its search for a way to distinguish Sherry: "An offset such as in Sherry is akin to a reimbursement claim from a common fund and, unlike in this case, the made whole doctrine was triggered." Averill, 155 Wn. App. at 114 n.4. This is unconvincing. Sherry does not say or suggest that the made whole doctrine is triggered only when the insurer is seeking reimbursement. Sherry states that the insured must be fully compensated for his loss before an insurer may seek "an offset, *subrogation, or* reimbursement" for benefits already paid. Sherry, 160 Wn.2d at 618 (emphasis added), citing Thiringer, 91 Wn.2d at 219. Sherry did not condition application of the made whole doctrine on the difference between subrogation and reimbursement, nor did it say anything about a common fund. Sherry recognizes that Washington has adopted "a broad view of full compensation." Sherry, 160 Wn.2d at 622. Thus, Averill is inconsistent with the reasoning in Sherry.

In short, the central holding proposed by Farmers and adopted in Averill is result-driven. Inconsistencies with Washington's existing case law are glossed

over. This court should reject Averill's holding that the made whole doctrine

applies only when the recovery from the tortfeasor is initiated by the insured.

2. The made whole doctrine applies to deductibles

If the made whole doctrine truly applied only when the recovery from the

tortfeasor was initiated by the insured, there would have been no need in Averill

to go further. Instead, the Averill court provides a second and independent

rationale to bolster its result: the made whole doctrine does not apply to

deductibles.

> This result is consistent with the purpose of the deductible.
> A deductible indicates the amount of risk retained by the insured.
> See Bordeaux[, Inc. v. Am. Safety Ins. Co.], 145 Wn. App. [687,]
> 695-96[, 186 P.3d 1188 (2008), review denied, 165 Wn.2d 1035
> (2009)]. The insurance policy shifts the remaining risk of any
> damages above the deductible to the insurance company. Id.
> Averill contracted to be out of pocket for the first $500. Farmers'
> subrogation interest was for the amount of the loss it paid Averill,
> not including the deductible amount. When Farmers pursued its
> subrogation interest, that interest did not include Averill's
> deductible. Allowing Averill to recover her deductible from Farmer'
> subrogation recovery would have changed the insurance contract
> to one without a deductible. We are not at liberty to rewrite the
> policy in this manner.
> Recovery by the insurer from a tortfeasor, under its
> subrogation interest for losses paid to its insured, is not the
> equivalent to a claim for reimbursement against a fund recovered
> by the insured and does not invoke the made whole doctrine.
> Averill is not entitled to recover her deductible from funds obtained
> by Farmers under subrogation from the third party's insurer.

Averill, 155 Wn. App. at 114-15 (footnote omitted).

Averill holds that an insured who agrees to a deductible effectively says

goodbye to it forever. "When Farmers pursued its subrogation interest, that

interest did not include Averill's deductible." Averill, 155 Wn. App. at 114-15.

This is wrong. The cause of action (against the tortfeasor) "is indivisible." Garrity

8

v. Rural Mut. Ins. Co., 77 Wis. 2d 537, 253 N.W.2d 512, 514-15 (1977). The subrogating insurer is acting in the name of the insured, Mahler, 136 Wn.2d at 418, not in its own name.

By paying the deductible up front, Daniels did not give State Farm the right to pursue in subrogation only its own interest in recovering the payments to Daniels. State Farm stepped into Daniels' shoes and therefore had to pursue Daniels' interest in recovering her deductible. It is Daniels who suffered the loss, not State Farm. The cause of action belongs to Daniels, not to State Farm. The idea that an insurer like State Farm is entitled to pursue only its own interest implies—wrongly—that Daniels' claim can be split and that she was free to proceed separately against the tortfeasors to recover her $500 deductible. Daniels' right of recovery passed to State Farm via the insurance contract ("the right of recovery of such party passes to **us**.")

Averill asserts that allowing the insured to recover her deductible from Farmers' subrogation recovery "would have changed the insurance contract to one without a deductible." Averill, 155 Wn. App. at 114. This is not an accurate statement. Whether or not there is a later subrogation recovery, a deductible always produces the effect bargained for by the parties. It reduces the insurer's obligation to investigate and pay for minor dings while reducing the premium for the insured. Thus, requiring State Farm to first pay Daniels $500 out of a subrogation recovery would not make the deductible ineffective.

The policy provision spelling out the insurer's right to subrogation is independent of any deductible agreed to in the coverage. The right to

9

subrogation serves to maximize the insurer's profits to an extent that depends on many variables: for example, whether there is a third party at fault; if so, whether the tortfeasor is insured; and how skillfully and efficiently the insurer pursues subrogation. But the insurance contract does not guarantee that the insurer will recover anything in any particular case.

In excluding deductibles from the made whole doctrine, Averill is inconsistent with this court's decision in Bordeaux. In Bordeaux, we addressed the nature of self-insured retention provisions in commercial general liability policies. Self-insured retention provisions are analogous to deductibles. Bordeaux, 145 Wn. App. at 695.[2] Applying Thiringer, the Bordeaux court held that an insured who paid a self-insured retention amount has priority over the insurer when proceeds from a third-party tortfeasor become available. Bordeaux, 145 Wn. App. at 696-97.

In Bordeaux, two related developers, Bordeaux Inc. and Cameray Inc., were defendants in construction defect lawsuits brought by condominium associations. Insurers for the developers defended them under a reservation of rights. Under the policies, each developer was obligated to pay a self-insured retention amount of $100,000 (analogous to a deductible) as a condition precedent to the right to a defense and coverage. Analogous to Daniels' State Farm policy, the policies obligated the insurers to cover their insureds' damages

---

[2] Averill lists cases that apply the made whole doctrine and states, "None of these cases discussed recovery of deductibles." Averill, 155 Wn. App. at 113. Averill mistakenly includes Bordeaux in that list, failing to recognize that it does discuss recovery of deductibles.

in excess of the self-insured retention amount. Bordeaux, 145 Wn. App. at 690-91.

After a mediation, the condominium association in the case involving Bordeaux Inc. agreed to accept $630,000 in settlement. Bordeaux Inc. satisfied its obligation to pay $100,000 toward this amount.[3] In the meantime, Bordeaux Inc. obtained third-party settlements from contractors. In a subsequent declaratory action against their insurer, American Safety Insurance Company, Bordeaux Inc. and Cameray Inc. sought to establish that they were entitled to the proceeds of the third-party settlements "to fully reimburse them for the SIR [self-insured retention] funds they paid for defense and settlement costs before any of the proceeds were paid to their insurers." Bordeaux, 145 Wn. App. at 693.

American Safety asserted a right of priority recovery from the proceeds of the third-party settlements. American Safety argued that retention of the risk of paying up to $100,000 for construction defect claims operated as primary insurance, making American Safety an excess insurer with a right to subrogation against the third-party settlement funds. The court rejected this argument and held that the self-insured retention was actually a form of traditional insurance involving risk shifting, not risk retention as would be the case if Bordeaux Inc. were truly a self-insurer. Bordeaux, 145 Wn. App. at 694-97.

---

[3] Bordeaux also paid its insurer a second $200,000 under protest and on appeal won the right to reimbursement, but the issue concerning the second $100,000 is not pertinent to the present case. See Bordeaux, 145 Wn. App. at 697-98.

Pertinent to the present case, the court then invoked the "long-standing rule of Thiringer" favoring full compensation of insureds over the subrogation rights of insurers. Bordeaux, 145 Wn. App. at 696-97. Applying Thiringer, the court concluded that the proceeds of the third-party settlements properly belonged to the insured developers to make them whole for their retention.

A subrogation provision in the policy stated, "'[i]f the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us [American Safety].'" Bordeaux, 145 Wn. App. at 691. In a similar case involving a policy with an identical subrogation clause, the Florida Supreme Court relied on Bordeaux as persuasive authority for applying the made whole doctrine. Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co., 39 Fla. L. Weekly S75, 133 So. 3d 494, 504-06 (2014). The policy required the insured to exhaust self-insured retention of $1 million before coverage would kick in. Intervest, 133 So. 3d at 506. The court held that the insured had to be fully compensated for its advance of self-retention funds before any third-party recovery funds were paid to the insurer, and this common law principle preserving the insured's right of priority could not be overridden by a transfer of rights provision in a policy. Intervest, 133 So. 3d at 504.

The point here is that self-insured retention provisions are analogous to deductibles. Bordeaux, 145 Wn. App. at 695. Just as developers who advance self-insured retention amounts of $100,000 (Bordeaux) or $1 million (Intervest) have a priority right to be made whole once a recovery from a tortfeasor is in

12

hand, an ordinary driver like Daniels has a priority right to be made whole for advancing her deductible of $500.

Precedent for the idea that collision deductibles are uniquely excluded from application of the made whole rule is sparse and unconvincing. One treatise, in a section titled "Subrogation—Pro tanto," does proclaim that "the made whole doctrine does not apply to deductibles." 2 Alan D. Windt, *Insurance Claims and Disputes* § 10:6, at 10-38 to -39 (5th ed. 2007). But the single case cited, Birch v. Fire Insurance Exchange, 2005 UT App 395, 122 P.3d 696, does not bear the weight of the generalization. On the unusual facts of the case, a judgment denying full recovery of the insured's deductible was affirmed primarily on the basis that the insured had already been more than fully compensated. "At the end of the day, Birch received $361.65 more than his actual damages." Birch, 122 P.3d at 700. By contrast, allowing Daniels to recover her full deductible will simply make her whole.

In passing, the Birch court also agreed with the insurer's position that "by attempting to recover the full $500.00 deductible, Birch is attempting to allocate the subrogation recovery to an uninsured portion of the loss, which amounts to double recovery." Birch, 122 P.3d at 699. The court cites no authority for this proposition. Similarly, the Windt treatise cites no authority for its assertion that if the insured were to be made whole for its deductible before the insurer is made whole, the insured would be receiving "an unbargained for, unpaid for, windfall." Windt, at 10-39. This assertion contradicts the general rule set forth by Windt at the beginning of the section: "the insurer has no right to reimbursement until the

13

insured's entire loss has been paid. This is true even if the insurer is liable for only a part of the loss and pays its entire obligation. An insurer cannot recoup any part of its loss while the insured is still less than whole." Windt, at 10-28. And according to a brief discussion of deductibles in Appelman, "in jurisdictions that follow the "'made-whole'" rule, the policyholder is entitled to recover first in the absence of contract provisions stating otherwise." 5 JEFFREY E. THOMAS & SUSAN LYONS, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 49.02[2][b] (2017).

Averill's assertion that applying the make whole rule would write the deductible out of the contract is unsupported by authority or reasoned analysis, yet it is now being cited by other courts as if it were solid law. See, e.g., Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency, Inc., 309 Conn. 449, 72 A.3d 36, 39 (2013); Jones v. Nationwide Prop. & Cas. Ins. Co., 613 Pa. 219, 32 A.3d 1261, 1268 (2011). In TD Banknorth, the court cites Averill in support of the insurer's argument "that the deductible is not part of the loss to which the make whole doctrine applies and that to conclude otherwise would essentially convert the policy into one without a deductible, thereby providing TD Banknorth with an unbargained for windfall at the expense of Fireman's Fund." TD Banknorth, 72 A.3d at 39. In Jones, the winning argument was that the plaintiff's position "would render the deductible meaningless and would convert the policy into a deductible-free policy." Jones, 32 A.3d at 1270. This is the same mistake made in Averill: to assume that the insured's priority right in allocation of proceeds from a third-party settlement exists only to the extent of loss covered by the policy.

3. The insured's right to be made whole does not depend on the loss being fully insured

The thread running through cases like Averill, Birch, TD Banknorth, and Jones is the mistaken idea that the right to be made 100 percent whole from a subrogation recovery is part of the coverage—something that has to be bargained for and something that is given up if the insured agrees to a deductible. Jones, for example, states, "Application of the made whole doctrine in such a case would force the insurer essentially to cover the risk of the deductible where the insured has not paid premiums to cover that risk." Jones, 32 A.3d at 1272. This court has previously explained the flaw in that reasoning. "The question of coverage concerns whether an insurer contracted to pay a particular loss. The question of reimbursement concerns only whether an insured has been fully compensated for its loss. This inquiry does not depend upon whether the loss is fully or only partially insured. Neither does it depend upon whether the insured itself was the cause of some part of the loss." S & K Motors, Inc. v. Harco Nat'l Ins. Co., 151 Wn. App. 633, 641-42, 213 P.3d 630 (2009) (footnotes omitted), citing Sherry, 160 Wn.2d at 621-22, 625. This makes sense. Although Daniels' collision damage loss was only partially insured by State Farm, it was still part of her loss. If there had been no subrogation recovery, she would properly remain only partially compensated for her loss— that is, she would remain out of pocket for the $500 deductible because that is what she agreed to. But as it happened, there was a subrogation recovery. Requiring State Farm to make sure Daniels is fully compensated from the funds received from the tortfeasor before keeping any for itself is not the same as

15

requiring State Farm to provide her with coverage for the first $500. The money is coming from the tortfeasor, not from the premium State Farm collected from Daniels in exchange for covering the loss less the deductible.

To read the respondent's brief, one would think it was State Farm that had suffered a loss. Covering losses is what insurance companies do and the collection of premiums is what enables them to do it. State Farm received a premium from Daniels to assume the risk that someone else's car would collide with hers and cause more than $500 worth of damage. In this particular case, the risk materialized, and State Farm had to make a payout to Daniels for the cost of repair less the deductible. But this payout was not a loss to State Farm, it was the cost of doing business. Daniels suffered a loss, while State Farm incurred a business expense. State Farm was able to establish that a tortfeasor was liable for 70 percent of Daniels' loss, and as a result, State Farm was able to obtain for itself an amount equivalent to 70 percent of the payout. Receipt of this amount by State Farm was over and above the coverage premium it had already received from Daniels. Just as in the Thiringer context, it is equitable that the first dollars received from the tortfeasor be given to Daniels, who is the actual victim of the tort.

The general purpose of subrogation is to facilitate placement of the financial consequences of loss on the party primarily responsible in law for such loss. Mahler, 135 Wn.2d at 412. State Farm claims that Averill is good policy because it furthers this purpose "by not penalizing a subrogating insurer that

uses its own resources to pursue the third party."[4]  State Farm compares itself to an insured in a personal injury case "who risks their own resources in pursuing the third party, while his or her insurer sits on the sidelines."  State Farm says that Averill properly recognizes that subrogating insurers should similarly "be rewarded for their efforts."[5]

As Mahler points out, the allocation of payment responsibility in subrogation stems from the moralistic basis of tort law.  Mahler, 135 Wn.2d at 411.  So it is not surprising that State Farm uses moralistic terms like "penalizing" and "rewarded" to justify its position.  But State Farm's argument constructs a false moral and equitable equivalency between the respective positions of insurer and insured.  It is the insured who suffered a loss.  The insurer received payment from the insured to cover the loss.  If the loss was caused by a third-party tortfeasor, and the insurer is able by its own efforts to shift its cost of covering that loss to the tortfeasor, the insurer has acted in its own interest and is not entitled to be rewarded for doing so.  The obligation to first make the victim whole does not penalize State Farm for subrogating; it embodies the "socially desirable" policy of fostering "the adequate indemnification of innocent automobile accident victims."  Thiringer, 91 Wn.2d at 220.

To the extent an insurer has to make extraordinary efforts to achieve recovery from the tortfeasor, there might be an equitable argument for cost sharing, similar to Mahler's requirement that insureds and insurer share the

---

[4] Brief of Respondent at 14 n.3.
[5] Brief of Respondent at 14 n.3.

expenses necessary to secure recoveries of personal injury protection benefits from tortfeasors. But this is a different question than whether it is good or bad policy to make a victim whole. As for cost sharing, the insurance commissioner's regulation already allows insurers to make a deduction from a deductible recovery for the expense of collecting it but only if an outside attorney is retained to collect the recovery and only as a pro rata share of "the allocated loss adjustment expense." WAC 284-30-393. This suggests that in a typical subrogation case, the expense of recovery is not extraordinary.

In short, I would follow the reasoning of S & K Motors, Inc. The insured's right to be made whole from a subrogation recovery is not part of the coverage she bargained for. It is an equitable obligation imposed by law on subrogating insurers as a matter of public policy.

4. Deductible cases should not be summarily dismissed

The cases brought by Averill, and now Daniels, are similar to a number of cases brought elsewhere. Results have varied. For example, at least two jurisdictions have allowed class actions to go forward. In Florida, the insurer's practice had been to reimburse insureds for their deductibles on a pro rata basis in proportion to the amount the insurer recovered on its subrogation claims. Powers v. Gov't Emps. Ins. Co., 192 F.R.D. 313, 315 (S.D. Fla. 1998). A federal court certified a class action, finding common questions of law and fact as to the issue whether the insurer "violated the insured-whole rule by failing to fully reimburse insureds' deductibles when it recovered amounts on its subrogation claims." Powers, 192 F.R.D. at 317. Recognizing that the insured-whole rule is

18

not uniformly applied in all the states, the court limited the class to Florida insureds. Powers, 192 F.R.D. at 319. The certified class was defined as "Geico insureds residing in the State of Florida for whom Geico has pursued subrogation against third parties and whom have not been reimbursed to the limits of their deductibles prior to recoupment by Geico of amounts paid to the insured." Powers, 192 F.R.D. at 320.[6] The Powers action concluded with a settlement establishing a fund of $975,000.[7]

In Montana, the Supreme Court allowed a class action to go forward to determine whether the insurer violated the law by taking a subrogation recovery in a collision coverage case without first reimbursing the insured for her unrecovered losses, including a deductible. Ferguson v. Safeco Ins. Co. of Am., 2008 MT 109, 342 Mont. 380, 382, 391, 180 P.3d 1164. In Ferguson, the court found it well established that an insurer "has a duty to first determine whether the insured has been made whole before the insurer may collect subrogation." Ferguson, 342 Mont. at 386. Final approval of a settlement for $4,766,169.72 in Ferguson was granted after a hearing on May 5, 2015.[8]

---

[6] Daniels proposed a similar class: "All persons in the State of Washington who had an automobile insurance policy issued by State Farm that included Collision coverage, where State Farm obtained any measure of recovery for payments made under that Collision coverage before its insureds were first fully compensated for the associated property damage loss."

[7] Joint Mot. for Prelim. Approval of Proposed Settlement & Approval of Notice to Class Members, No. 97-0010-CIV, Ex. 1 para. Z, at 9 (S.D. Fla. June 24, 1999) (Settlement Agreement) [https://perma.cc/EDR4-6EBA].

[8] Ferguson v. Safeco, Case No. DV 04-628B: Overview of the Proposed Settlement, Garden City Group LLC, http://fergusonmontanasettlement.com/ [https://perma.cc/5YGW-2MWS].

On the other hand, a class action complaint similar to Daniels' was dismissed in Jones, 32 A.3d 1261. As discussed above, the court concluded in Jones that "the made whole doctrine does not apply in cases involving collision coverage policies" and "the insured should not get preferential treatment in a collision coverage case, when he or she accepted the risk of paying the deductible in the event of an accident." Jones, 32 A.3d at 1272.

A different rationale was used to dismiss a putative class action in Chandler v. State Farm Mutual Automobile Insurance Co., 596 F. Supp. 2d 1314 (C.D. Cal. 2008), aff'd, 598 F.3d 1115 (9th Cir. 2010). There, the plaintiff's auto insurer paid 80 percent of his car rental expense; the plaintiff paid the remaining 20 percent, or $63.49. Upon obtaining partial reimbursement for the car rental expense from the third party's insurer, the plaintiff's insurer did not first, or ever, reimburse the plaintiff for his contribution of $63.49. The court phrased the issue as "whether an insurer must make the insured whole before pursuing a subrogation claim against the third-party tortfeasor's insurer where the insured herself has not yet sued the third-party tortfeasor." Chandler, 596 F. Supp. 2d at 1318. The court was persuaded to answer "no" to this question by Winkelmann v. Excelsior Insurance Co., 85 N.Y.2d 577, 626 N.Y.S.2d 994, 650 N.E.2d 841 (1995).

I believe Jones was wrongly decided for the reason discussed above, namely that it views the right to be made whole as a feature of coverage. I believe Winkelmann is unhelpful here because, unlike in the present case, it involved a situation where the insurer and the insured jointly sued the tortfeasor.

The insurer settled its subrogation claim before the insured was ready to settle its own claim. The court viewed the two claims as "divisible and independent," and held that the insurer was not required to forego its right to subrogate "while the insured delays in asserting its claim against the third party, as plaintiffs did here." Winkelmann, 650 N.E.2d at 844-45. Chandler is unconvincing because it assumes that the insured had to first make its own attempt to recover $63.49 from the tortfeasor before demanding any of the proceeds of the insurer's subrogation. Chandler, 596 F. Supp. 2d at 1321. "Plaintiff's lawsuit is unripe because Plaintiff has not sufficiently established that he cannot recover the $63.49 from the third-party tortfeasor." Chandler, 596 F. Supp. 2d at 1323.

My larger point is that the cases discussed above illustrate the variation in the approaches that have been taken to the problem of allocation of a subrogation recovery—the "troublesome question," as Mahler termed it, of "the precise enforcement mechanism for the subrogee's right of reimbursement." Mahler, 135 Wn.2d at 412-13. This variation weighs against deciding these deductible cases on motions to dismiss under CR 12(b)(6), which tends to produce absolute, hard-line holdings like Averill's declaration that "Averill has no claim as a matter of law." Averill, 155 Wn. App. at 109.

Daniels' claim was likewise dismissed in a motion alleging failure to state a claim. Consequently, the appellate record is short. It does not include the policy, except for the page that contains the subrogation clause, which was handed up to the trial court at oral argument. We do not have the cover page, the definitions page, or any other part of the policy. We do not know the amount

of Daniels' original loss or the amount of State Farm's subrogation recovery. We do not know how State Farm achieved its recovery from the tortfeasor, whether doing so required extraordinary efforts, or whether Daniels did anything to impair these efforts. We do not know if State Farm proceeded according to a uniform practice. We do not know whether State Farm's practice differs from the practices of other insurers. We do not know if State Farm or other insurers would handle a large deductible differently than a $500 deductible. These are but a few of the factors that, if more was known about them, might influence the shaping and development of the law in this area.

Averill erred in flatly declaring that the made whole doctrine does not ever apply in the subrogation context and does not ever apply to deductibles. But given the current state of the law, it might also be error, on a CR 12(b)(6) motion, to declare the opposite as a matter of law—that the made whole doctrine always applies in the subrogation context and always applies to deductibles, without exception. The facts of the Winkelmann case, where the insurer and insured jointly sued the tortfeasor and there was an issue of delay, furnish an example of a nuance that might call for a more flexible rule. For this reason, Ferguson and Powers—decisions that allowed the cases against the insurers to go forward— are better models than cases like Averill that summarily dismiss. Daniels has presented a live issue: whether an insurer violates the made whole rule or breaches a contractual subrogation clause by taking a subrogation recovery in a collision coverage case without first reimbursing the insured for the deductible. I would remand to set the matter for trial. This would allow the parties to conduct

22

discovery, the insurer to assert defenses, and the trial court eventually to decide the issue against a fully developed factual background.

5. <u>The policy language requiring full compensation gives the insured priority in allocation</u>

I now come to the majority opinion in this case, which arrives at affirmance solely by interpreting the subrogation clause in the insurance contract: "**Our** right to recover **our** payments applies only after the **insured** has been fully compensated for the **bodily injury, property damage,** or **loss**." I agree with Daniels that this provision incorporates the made whole doctrine, and it obligated State Farm to reimburse her for her full loss of $500 before keeping the remainder of the recovery for itself.

Quoting excerpts from Daniels' brief, State Farm and the majority both misstate what Daniels is arguing. They claim Daniels is taking the untenable and easily defeated position that State Farm must return the full deductible to her *before* asserting a subrogation claim against a third-party tortfeasor or wait until she recovers it for herself.[9] This is a straw man argument. Daniels' position is that State Farm had to reimburse her for the full deductible *after* obtaining any recovery from assertion of a subrogation claim. She states, "Reading the plain language of the policy as written, Daniels was entitled to get the rest of her loss taken care of before State Farm could keep any third party money for itself."[10]

---

[9] Majority at 6; Brief of Respondent at 23-24.
[10] Brief of Appellant at 2.

According to Daniels, the record "indisputably establishes that State Farm kept money it received from Geico—money that should have gone to Daniels."[11]

At oral argument before the trial court, State Farm correctly stated Daniels' position. State Farm informed the court that after paying out on the property damage coverage, it filed an arbitration demand against the insurance carriers for the other two drivers involved in the accident. State Farm included Daniels' deductible in the claim. One insurer paid 70 percent of the repair costs representing what it agreed was its insured percentage of fault. State Farm gave Daniels $350, or 70 percent of her deductible. Daniels sued at this point, claiming that she should have received 100 percent of her deductible from this initial recovery. State Farm correctly told the trial court that Daniels was claiming "that we should have paid her a 100 percent of her deductible out of our recovery of our subrogation right before we kept any of that subrogation right. That's the basis of this lawsuit."[12] And this is exactly what Daniels claims on appeal.

Because the majority's analysis sets off on the wrong foot, it lands in the wrong place. It is unfair to Daniels to recast her argument as a claim that she must receive a refund of the deductible *before* State Farm is permitted to exercise its right to subrogation. Daniels straightforwardly defines the issue in terms of how State Farm allocated the funds it had already received in subrogation.

---

[11] Reply Brief of Appellant at 1.
[12] Report of Proceedings (July 29, 2016) at 7.

Under the contract, State Farm's "right to recover" its payments from funds received in subrogation "applies only after the **insured** has been fully compensated" for the loss. Courts construe insurance policies as a whole, giving them a fair, reasonable, and sensible construction. Insurance policies are construed liberally, in order to provide coverage whenever possible. Terms that are defined within a policy should be interpreted in accordance with the policy definition. An undefined term is interpreted according to its ordinary meaning, unless there is a legal, technical meaning that both parties clearly intended to apply. Ambiguities are construed in favor of the insured. S & K Motors, Inc., 151 Wn. App. at 639-40. The majority does the opposite of what these familiar rules require.

The majority says the only reasonable interpretation of "fully compensated" in the provision quoted above is that it "does not include the amount of deductible paid by the insured." Majority at 8. The majority rightly rejects as unpersuasive State Farm's heavy reliance on Meas v. State Farm Fire & Casualty Co., 130 Wn. App. 527, 123 P.3d 519 (2005), review denied, 157 Wn.2d 1018 (2006), for the proposition that "fully compensated" means payment of the collision loss less the deductible.[13] Yet the majority fails to otherwise justify that proposition in terms of the plain language of the policy or in terms of the rule requiring us to view insurance contracts in the light most favorable to the insured. Daniels paid $500 toward the repair of the car. That was a loss, and until she got it back, she was not fully compensated.

---

[13] Majority at 8 n.3; see Brief of Respondent at 18-22.

25

6. The insurance commissioner's regulation allowing reduction for "applicable comparable fault" does not control

State Farm acknowledges that if "fully compensated" means payment of the collision loss less the deductible, then State Farm had no *contractual* obligation to include the deductible in its subrogation demand or pay Daniels any fraction of it.[14] Yet State Farm did include the deductible in its demand and did give Daniels 70 percent from the amount recovered. Why? According to State Farm, its obligation to go even this far comes not from the contract, but solely from a regulation promulgated by the Office of the Insurance Commissioner.

At the time Averill was decided, the regulation applied the Thiringer principle by requiring that subrogation recoveries "be allocated first to the insured for any deductible(s) incurred in the loss." Former WAC 284-30-393; Averill, 155 Wn. App. at 115 & n.5. Averill held that this regulation was "wrong as a matter of law" because "Thiringer does not require that the insured be made whole for its deductible when the insurer pursues its subrogation interest." Averill, 155 Wn. App. at 117.

After Averill, Farmers petitioned the commissioner to change the rule to comply with Averill. Farmers asked that the regulation be amended "so that insurers may deduct the amount of an insured's comparative fault from reimbursement for their deductible, when settling a claim."[15] The regulation was

---

[14] Brief of Respondent at 27.

[15] Clerk's Papers at 33 (Office of Ins. Comm'r, Final Cost Benefit Analysis: Chapter 284-30 WAC, Regarding How an Insurer Handles an Insured's Deductible in a Subrogation Demand (June 2011)).

changed, and it now provides that any recoveries must "be allocated first to the insured for any deductible(s) incurred in the loss, *less applicable comparable fault.*" WAC 284-30-393 (emphasis added).

Without Averill, the amendment to the regulation is wrong as a matter of law. And even with Averill, there is no other basis in statute or case law for the reduction of an insured's recovery of a deductible by "applicable comparable fault." By statute, the basis for contribution among liable persons is the "comparative fault" of each person, not comparable fault. RCW 4.22.040(1). But assuming these two terms mean the same thing, Sherry has already held that full recovery under the made whole principle is not limited to the nonnegligent. Sherry, 160 Wn.2d at 621. "Rather, our opinions suggest insureds are not fully compensated until they have recovered all of their damages as a result of a motor vehicle accident." Sherry, 160 Wn.2d at 621.

And even if the insurance regulation could lawfully authorize reduction for comparative fault, it does not apply in this case because there is no evidence that Daniels was at fault. State Farm contends the phrase "applicable comparable fault" is not limited to the fault of the insured.[16] But it is a stretch to imagine that it means anything else, considering that the amendment was adopted in response to Farmers' petition that referred specifically to "an insured's comparative fault."

State Farm's discussion of the regulation reinforces the impression that its analysis is driven by the desire to justify an existing practice of returning the deductible to its insured after reducing it by the percentage of State Farm's own

---

[16] Brief of Respondent at 32.

payment that it was able to recover. In this case, State Farm recovered 70 percent, so State Farm deemed it fair to return only 70 percent of her deductible to Daniels —even though Daniels was free of fault. State Farm has not presented a sound theoretical basis for this result. It somewhat resembles Professor Keeton's Third Rule: "The recovery from the third person is to be prorated between the insurer and the insured in accordance with the percentage of the original loss for which the insurer paid the insured under the policy." Keeton, at 161. But it is not the same, because in the Keeton formulation, the variable is the percentage of original loss, not the amount of the recovery from the tortfeasor or the tortfeasor's percentage of comparative fault. And as Keeton reports, the typical application of the Third Rule is found not in contested cases, but rather as "the result achieved by compromise settlement between the insured and insurer, whether or not it is consistent with the legally enforceable rule of allocation." Keeton, at 163-64. With respect to the legally enforceable rule of allocation, as previously noted, Washington—like most jurisdictions—is in the camp of Keeton's Fourth Rule, the made whole rule.

7. Attorney fees should abide the result

Daniels requests an award of attorney fees under the rule of Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991). State Farm contends that if Daniels prevails, Olympic Steamship does not apply because this case "does not involve a denial of coverage or even a coverage

28

question."[17] I agree that the case does not involve a denial of "coverage"; this is exactly the point I made above when citing S & K Motors, Inc. But the Olympic Steamship entitlement to attorney fees applies when an insured "is compelled to assume the burden of legal action to obtain the benefit of its insurance contract." Olympic Steamship, 117 Wn.2d at 54. This rule will apply to Daniels if, on remand, she obtains judgment for breach of contract.

Reversing the order of dismissal and reinstating Daniels' complaint will mean only that she has the opportunity to proceed with her claims; it does not conclusively determine that she will prevail. Accordingly, I would hold that her request for attorney fees will abide the result at trial.

8. Conclusion

The guiding principle of Thiringer is well established, theoretically sound, simple to understand, and easy to follow—all of the things the law should strive to be. There is no good reason to push Thiringer aside in cases where a recovery from a tortfeasor is made by a subrogating insurer, and there is no good reason to push it aside in cases involving deductibles. The majority errs in following Averill down what has already become a twisting and murky path. The proper course of action is to turn back. I would reverse and remand for

---

[17] Brief of Respondent at 34, citing Dayton v. Farmers Ins. Grp., 124 Wn.2d 277, 282, 876 P.2d 896 (1994).

reinstatement of Daniels' complaint and for further proceedings not inconsistent with this opinion.

Becker, J.